**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| In Re: | ) | Chapter 13 |
| | ) | |
| Crystal C. Morales, | ) | |
| | ) | Judge Carol A. Doyle |
| Debtor. | ) | |
| | ) | Case No. 16 B 21624 |

**MEMORANDUM OPINION**

Crystal Morales, the debtor in this chapter 13 case, filed a motion to confirm her plan. The plan provides that she will make monthly payments to the chapter 13 trustee of $400. The trustee objects to this plan because it does not require the debtor to pay what the trustee calls her tax "refund" as an additional plan payment each year. The trustee's objection will be overruled. The debtor receives an annual payment based on tax credits for low-income workers. She is not required to pay that income to the trustee. Instead, the debtor can offset that annual payment with expenses that she will incur throughout the year that are reasonably required to support herself and her two children.

I.    Background

The debtor is self-employed. She earns $1,000 per month and receives $500 per month from food assistance programs to support herself and her two children. She received an income tax "refund" of $5,350 for the 2015 tax year. The payment was not actually a refund of amounts the debtor had previously paid to the government for taxes but instead consisted of an earned income credit of $3,350, a child tax credit of $1,000, and an education credit of $1,000. The trustee asserts that it is likely that the debtor will receive similar "refunds" during each year of

her plan and that she must pay the entire "refund" to the trustee each year despite her low income.

The trustee contends that the definition of "current monthly income" ("CMI") in § 1325(b)(2) of the Bankruptcy Code requires this result because it does not exclude income received through tax credits. She therefore asserts that the entire lump sum payment that the debtor expects to receive is "projected disposable income" that must be sent to the trustee each year as an additional plan payment. In the trustee's view, every chapter 13 debtor who does not pay 100% of unsecured claims must turn over to the trustee all tax refunds received during the course of the plan as additional plan payments.

The trustee's position is not correct. Under § 1325(b), debtors have choices regarding how to deal with expected tax refunds. They may agree to turn over tax refunds as a shortcut to eliminate the need to determine a reasonable tax expense to deduct from CMI. Or they may deduct from their CMI a reasonable estimate of their actual tax expense. If debtors estimate their tax liability properly at the time of confirmation, they need not pay tax refunds to the trustee. Or in cases like this – in which the "refund" is generated from tax credits to low-income workers – debtors may prorate the expected "refund" over 12 months, thereby increasing their CMI by 1/12 of the expected annual payment. They may then offset the increase with reasonable expenses that accumulate over the course of the year. If the full expected "refund" is offset, debtors need not pay any additional amount to the trustee beyond their regular monthly plan payment. In sum, the trustee is not automatically entitled to the tax refunds of debtors who will not pay unsecured creditors 100% of their claims.

II.     Calculating Plan Payments in Chapter 13

Analysis of the tax refund issue must begin with § 1325(b) of the Bankruptcy Code, which often prescribes the minimum amount that debtors must pay to creditors in their plans. Section 1325(b) says that if a trustee or unsecured creditor objects to a debtor's plan, the court may not approve the plan unless it provides that all of the debtor's projected disposable income during the relevant commitment period will be applied to make payments to unsecured creditors. 11 U.S.C. § 1325(b)(1)(B).  Since the trustee objects in this case, the debtor's plan cannot be confirmed unless it provides that she will pay her projected disposable income to her creditors. The key phrase – projected disposable income – is best analyzed by first examining how "disposable income" is calculated and then considering the impact of the word "projected."

    A.     Disposable Income

Section 1325(b)(2) defines "disposable income" as

> current monthly income received by the debtor (other than child support payments, foster care payments, or disability payments for a dependent child made in accordance with applicable nonbankruptcy law to the extent reasonably necessary to be expended for such child) less amounts reasonably necessary to be expended (A)(i) for the maintenance or support of the debtor or a dependent of the debtor, or for a domestic support obligation, that first becomes payable after the date the petition is filed; and (ii) for charitable contributions . . . .

11 U.S.C. § 1325(b)(2).  In other words, disposable income equals current monthly income (CMI) minus reasonably necessary expenses.

1.   CMI

Section 101(10A) defines "current monthly income" as the average of all income and benefits received by the debtor, with certain exclusions not relevant here,[1] during the six months prior to the filing of the bankruptcy petition. 11 U.S.C. § 101(10A). As bankruptcy courts have consistently held, CMI is a measurement of gross pre-tax income and includes public assistance benefits such as the earned income tax credit. *See, e.g., In re Forbish*, 414 B.R. 400, 402-03 (Bankr. N.D. Ill. 2009); *In re Royal*, 397 B.R. 88, 93–94 (Bankr. N.D. Ill. 2008); *In re Cook*, No. 12-04896-TOM-13, 2013 WL 5574978, at *6 (Bankr. N.D. Ala. Oct. 10, 2013).

Importantly, a debtor's CMI is not synonymous with the number at the bottom of Schedule I[2] for two reasons. First, Schedule I requires a debtor to disclose gross income from all sources, including income excluded from the definition of CMI (like Social Security). It also requires the debtor to subtract deductions his employer has made from his pay for taxes and other items. Second, Schedule I does not reflect an average of the debtor's gross income during the six months before the petition date. *See Forbish*, 414 B.R. at 402; *In re Spraggins*, 386 B.R.

---

[1] The definition of CMI excludes Social Security benefits and payments to victims of war crimes, crimes against humanity, or terrorism.

[2] Debtors must file Schedules I and J, along with many other documents, within 14 days of filing the bankruptcy petition in every bankruptcy case. *See* 11 U.S.C. § 521; Fed. R. Bankr. P. 1007. There are official forms for these schedules and the other required documents, as well as instructions for completing them. Schedule I requires the debtor to disclose monthly gross income and certain specified monthly deductions from income as of the date the schedule is filed. Schedule J requires the debtor to disclose specified monthly expenses as of the date the schedule is filed. Another form, B122-C-1, is specifically designed to calculate CMI, but it appears to be used primarily to determine whether a debtor's income is above-median or below-median and which commitment period is required.

221, 225 (Bankr. E.D. Wis. 2008). So Schedule I does not calculate a debtor's CMI.

      2.    Expenses

Once CMI is calculated, § 1325(b)(2) permits debtors to deduct reasonably necessary expenses for themselves and their dependents. The amount of reasonably necessary expenses that a debtor may deduct from CMI is significantly affected by whether the debtor's CMI is above or below the median income for the debtor's household size in his state. If the debtor's CMI is above the median, the debtor's expenses are limited by national and local standards as set forth in § 707(b)(2). 11 U.S.C. §1325(b)(3). If the debtor's CMI is below the median, no formal limits are prescribed; reasonably necessary expenses are evaluated on a case-by-case basis. *See In re Brooks*, 784 F.3d 380, 384 n.3 (7th Cir. 2015). It is important to note that for both above-median and below-median debtors, reasonably necessary expenses are not limited to those listed on Schedule J. In fact, some reasonably necessary expenses, such as taxes, insurance, and union dues, appear on Schedule I, not Schedule J.

In short, the debtor's disposable income equals her CMI minus all reasonably necessary expenses. Schedules I and J do not determine the debtor's plan payment, but, as discussed later, they can provide a convenient shortcut for calculating disposable income when the parties agree to this approach.

      B.    "Projected" Disposable Income

Section 1325(b) requires a debtor to commit her *projected* disposable income to the plan. The Supreme Court examined the meaning of "projected" in *Hamilton v. Lanning*, 560 U.S. 505 (2010). The Court explained that the bankruptcy judge "should begin by calculating disposable income, and in most cases, nothing more is required." *Id.* at 519. Yet, the word "projected"

allows bankruptcy judges "in unusual cases" to "go further and take into account other known or virtually certain information about the debtor's future income or expenses." *Id.*

Under § 1325(b) and *Lanning*, the debtor's plan payment in almost all cases will depend on the debtor's financial circumstances when the petition is filed. The formula in § 1325(b) for setting the plan payment is not intended to address possible future changes in income or expenses unless they are virtually certain to occur. If income or expenses increase or decrease significantly after confirmation, the only way to change the plan payment is through a motion to modify the plan under § 1329 of the Code, 11 U.S.C. § 1329.

Courts have developed presumptions and other tests for determining when potential future tax refunds are virtually certain to be received and therefore must be included in the calculation of projected disposable income. In this case, however, the issue is not disputed. The debtor concedes that she expects to receive similar annual payments in the future based on the earned income credit, child tax credit, and educational credit. These payments therefore satisfy the test for "projected" disposable income and must be included in the calculation of the debtor's plan payment.

C.     Reasonable Tax Expense

The statutory formula for determining plan payments – CMI minus reasonable expenses – provides the framework for resolving the tax refund issue. As many courts have held, the proper way to deal with taxes when calculating the debtor's plan payment is to deduct a reasonable estimate of the debtor's actual tax liability from CMI. *See, e.g., In re Hilgendorf*, No. 10-37111-svk, 2011 WL 353240, at *1 (Bank. E.D. Wis. 2011) (holding that "the refund is actually an overestimated expense"); *In re Robenhorst*, No. 10-25095-svk, 2011 WL 1434696, at

*1 (Bankr. E.D. Wis. 2011) ("Debtors deducting the amount of taxes actually paid are not required to dedicate any portion of tax refunds toward the plan."); *Forbish*, 414 B.R. at 404 ("[The debtor] was entitled to calculate her disposable income by subtracting her actual tax liability from CMI as a reasonably necessary expense."); *In re Michaud*, 399 B.R. 365, 371-73 (Bankr. D.N.H. 2008); *Spraggins*, 386 B.R. at 226-27.

If a debtor typically gets a tax refund because her employer withholds more than she will actually owe in income taxes each year, then the amount listed in Schedule I for payroll tax deductions does not accurately reflect her actual tax expense. It is too high. She can fix the problem by calculating her disposable income using a reasonable estimate of her actual tax liability instead of the amount withheld for taxes. Under *Lanning*, this estimate should almost always be based on the debtor's past experience. The debtor should then divide her actual tax liability by 12 and deduct that number from CMI. The income left after she deducts the rest of her reasonable expenses is the minimum plan payment required under § 1325(b). If the debtor proposes to pay that amount, she need not pay future tax refunds to the trustee. She has fully complied with § 1325(b)(2).

Instead of using the correct numbers for calculating the plan payment, the trustee in this case as well as debtors in this district often use Schedules I and J as a shortcut to determine the plan payment. Under their approach, the amount listed in Schedule I for taxes withheld is used as the estimate of the debtor's tax expense. The trustee then requires the debtor to pay 100% of any future tax refunds to the trustee as an additional plan payment, presumably to correct any errors from overwithholding. Debtors are free to agree to this approach as an easy way to deal with the tax issue. But the trustee cannot require it. If debtors account for their expected

7

income and tax expense correctly at the time of confirmation, tax refunds need not be paid as additional plan payments.

The tax refund issue often arises in cases in which the debtor's employer is withholding more than the debtor's actual tax liability. In this case, however, the debtor's tax "refund" does not result from overwithholding. Nothing is withheld from her earnings because she is self-employed, and at her low income she owes no taxes. So the tax "refund" the trustee seeks in this case is not actually a refund at all. Instead, the "refund" arises from an earned income credit, a child tax credit, and a refundable education credit. These credits are essentially public assistance payments to people who are employed but have low income. *See, e.g., In re Hardy*, 787 F.3d 1189, 1193 (8th Cir. 2015) (child care tax credit is exempt as a public assistance benefit). In these circumstances, the issue cannot be resolved simply by using a good estimate of the debtor's actual tax expense because she already correctly estimates her tax expense as zero. Instead, the debtor must accurately account for both the extra annual income and her offsetting expenses when calculating her plan payment.

    D.    <u>Income From Tax Credits</u>

The essence of the trustee's objection in this case is that the debtor's expected tax credits must be included in CMI and therefore must be paid in full to the trustee every year. As discussed above, the trustee is correct that the tax credits are included in CMI. But that does not mean the debtor must pay all of these tax credits to the trustee. The debtor can still comply with § 1325(b) if she accounts for the expected tax credits in calculating her plan payment. The simplest way to do this is to divide the annual payment by 12 and add the resulting amount to her calculation of CMI. She may then deduct from the higher CMI figure the reasonable expenses

she expects to incur each month (or each year, divided by 12) to arrive at the monthly plan payment.

In this case, the debtor's tax credit payment for the previous tax year was approximately $5,300. Dividing this number by 12 results in increased CMI of approximately $440 per month. The debtor has said she would like to amend her Schedules I and J to prorate both this additional income and additional expenses. If the debtor amends her Schedules I and J, and if the increases in her expenses that could potentially offset the additional prorated income are reasonable, the court would confirm her plan without requiring her to pay future tax "refunds" to the trustee.

E. The Trustee's Arguments

The trustee objects to this approach of prorating the annual tax credit payment as income over 12 months, calling it "illusory" and arguing that it would make the debtor's plan unfeasible because she would not have the actual cash flow each month to make plan payments. Neither argument has merit.

First, the income is in no sense "illusory;" it is real and must be accounted for in the debtor's CMI calculation, as the trustee herself insists. In fact, the instructions on Schedule I direct the debtor to prorate any income not received on a monthly basis: "2. List monthly gross wages, salary and commissions (before all payroll deductions). *If not paid monthly, calculate what the monthly wage would be*." Official Form 106I (emphasis added). The separate instruction manual for completing the forms explains in more detail: "If your income is received in another time period, such as daily, weekly, quarterly, annually, or irregularly, calculate how much income would be by month, as described below." Instructions: Bankruptcy Forms for Individuals 26 (Rev. Apr. 2016). The instructions then provide specific examples of non-

9

monthly income and show debtors how to add up all the expected income payments received in a year, divide that number by 12, and disclose the resulting number as monthly income. So prorating on Line 2 of Schedule I annual income from tax credits is not only appropriate, it is required.

Since the debtor must include the expected tax credits in her Schedule I and her CMI even though she does not receive them on a monthly basis, § 1325(b) permits her to deduct her reasonable expenses from them. As with Schedule I, the instructions for Schedule J direct the debtor to take all expenses, whether weekly, quarterly or annual, and "show all totals as monthly payments." *Id*. at 28. In other words, a debtor must prorate expenses incurred over the course of the year to determine the proper amounts to list in Schedule J as monthly expenses.

Thus, the official forms and instructions direct debtors to prorate all income and expenses by adding up the total amounts for a year and dividing by 12 to arrive at monthly figures disclosed in Schedules I and J. Section 1325(b) then permits debtors to deduct their reasonable expenses from their income, regardless whether the income is received or the expenses are incurred annually or otherwise. In other words, debtors may deduct reasonable expenses from all income they receive, including annual payments like tax credits. The trustee's contention – that the debtor must turn over the full amount of her tax credits – does not permit the debtor to deduct her reasonable expenses from the credits. The trustee's approach eliminates entirely the "expenses" component from the statutory formula for plan payments – CMI minus reasonable expenses – when the income is received annually. There is no such limit on a debtor's right to deduct expenses from income under § 1325(b).

The trustee's second argument – that prorating annual income will make the plan

unfeasible – also fails.  If the debtor has reasonable expenses that offset the tax credits, her plan payment will not increase.  If she does not have enough expenses to offset the full amount of the tax credits, she can still choose to make the correct monthly plan payment.   She can then cover the rest of her expenses as she presumably did pre-petition, either by saving the amounts received from the tax credits and using them to pay expenses during the year, or by delaying paying bills and deferring purchases until she received the tax credits.  Given the timing of this case, the debtor should in fact receive her annual tax credits soon and can use them to pay her additional expenses as they arise.

$5,300 in tax credits increases the debtor's total income, including food assistance of $504 per month, to a total of only $1,900 per month, or $23,328 annually from all sources, to support a family of three.  To describe the debtor's current budget as "tight" would be an understatement.  It is difficult to see how a family of three could realistically live on this budget, which does not provide enough for known expenses, let alone the unpredictable expenses that debtors typically face over the course of a plan.  If the debtor's monthly income were $1,940 per month (instead of $1,500 per month with a lump sum payment of $5,300 once per year), it would be hard to envision any viable objection to a budget that used up most or all of that income to make a $400 plan payment and cover the reasonable expenses of the debtor and her two children. The result should not be different simply because the debtor receives a $5,300 lump sum after filing her tax return.

It is worth noting that, to justify her position, the trustee has suggested that the Code "requires" her to seek tax refunds in every case in which unsecured creditors are not paid 100% of their claims.  She is mistaken. Section 1325(b)(1) states that *if* the trustee objects, the

11

projected disposable income test applies. It *permits* her to object but does not *require* her to do so. Other chapter 13 trustees in this district exercise their discretion not to seek payment of these tax credits from low-income debtors. They violate no statutory or other duty in doing so.[3] One trustee in this district does not usually seek refunds even in cases in which tax refunds are generated from overwithholding. The other two trustees allow all debtors to keep $2,000 of their tax refunds. Those debtors may then seek to modify the plan if they wish to keep larger amounts.

The approach these trustees take is consistent with many opinions holding that chapter 13 debtors may keep all or a portion of tax refunds to cover a reasonable amount of unplanned expenses that debtors are likely to incur. *See*, *e.g, In re Ramos*, 494 B.R. 181, 187 (Bankr. D.P.R. 2013); *In re Skougard*, 438 B.R. 738, 741-42 (Bankr. D. Utah 2010); *Michaud*, 399 B.R. at 372; *In re Spraggins*, 386 B.R. at 226-28, supplemented, No. 07-24728-svk, 2008 WL 2073947 (Bankr. E.D. Wis. May 14, 2008) (permitting debtors to retain 50% of their tax refund "to help with unforeseen expenses and increased costs of living"). Rooted in all of these approaches is the sensible recognition that, to succeed in a chapter 13 case, a debtor must have some flexibility in his budget.

---

[3]The trustee also suggests that the Handbook for Chapter 13 Trustees issued by the U.S. Trustee Program requires her to demand that debtors turn over their tax refunds in every case. The portion of the handbook cited, however, merely states that the trustee should "conduct a disposable income analysis on each case and object as appropriate if all projected disposable income is not committed to make payments to unsecured creditors under the plan." *Handbook for Chapter 13 Trustees*, § C. This is entirely consistent with the statute, which allows but does not require trustees to object. By advising trustees to object "if appropriate," the handbook recognizes the discretion trustees have in determining whether to object.

III. <u>Conclusion</u>

The trustee's objection to confirmation on the basis that the debtor is required to pay her entire tax "refund" to the trustee is overruled. The debtor must file amended Schedules I and J prorating additional income and expenses. To the extent the expenses are reasonable, they may be deducted from the debtor's CMI to determine the appropriate plan payment, and the plan will be confirmed without language requiring payment of expected tax credits.

Dated: February 27, 2017

ENTERED:

_____
Carol A. Doyle
United States Bankruptcy Judge